UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARINEH GHARAKHAN,<br><br>                    Petitioner,<br><br>    v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, Attorney General; TODD LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office, San Diego Field Office, CHRISTOPHER LAROSE, Warden, Otay Mesa Detention Center,<br><br>                    Respondents. | Case No.: 25-cv-02879-DMS-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR TEMPORARY RETRAINING ORDER**<br><br>**[ECF No. 3]** |

On October 24, 2025, Petitioner filed a petition for writ of habeas corpus ("Petition"), (Pet., ECF No. 1), and a motion for temporary restraining order ("Motion"), (Mot., ECF No. 3). Respondents filed an opposition in response to both the Petition and Motion. (Opp'n, ECF No. 9). Petitioner filed a reply in support of her Motion. (Reply, ECF No. 10). For the following reasons, the Motion is granted in part and denied in part.

## I.   BACKGROUND

Petitioner and her family fled Iran when Petitioner was one year old. (Mot. 3). Her family came to the United States in the late-1980s, receiving permanent resident status as Armenian Christian refugees. (*Id.*); (Opp'n 1). In 2018, Petitioner was convicted of robbery and subsequently ordered removed to Iran. (Mot. 3). However, because of her status as an Armenian Christian and fear of persecution, Petitioner was granted withholding of removal to Iran. (*Id.*). On October 2, 2018, Petitioner was released from custody on an Order of Supervision. (Opp'n 1). If Petitioner committed any further crimes while on supervised release, she would be re-detained. (*Id.*). On or around February 21, 2025, Petitioner was arrested in Orange County for possession of a controlled substance. (Mot. 3); (Opp'n 1). She was released from county jail and taken directly into Immigration and Customs Enforcement ("ICE") custody on February 23, 2025. (Mot. 3); (Opp'n 1). She has since been in ICE custody. (Mot. 3).

Petitioner alleges that she has not been given a chance to contest her re-detention. (*Id.*). Respondents allege that ICE officers showed Petitioner a Form I-200, Warrant for Arrest of Alien, at the time of her re-detention, and a Notice of Custody Determination the next day. (Opp'n 1–2). Respondents allege that Petitioner had the opportunity to request that an immigration judge ("IJ") review her custody determination, but Petitioner affirmatively acknowledged receipt of the notification and declined review. (*Id.* at 2). Petitioner alleges that approximately six months into her re-detention, an officer told her that ICE was "trying to see what country they could send [her] to." (Mot. 3). On August 15, September 18, and October 8, 2025, ICE's Enforcement and Removal Operations ("ERO") sent requests to the Removal Management Division for third country removal. (Opp'n 5). On October 21, 2025, ICE provided Petitioner with notice that her custody status will be reviewed on or about October 31, 2025. (*Id.* at 2). Petitioner alleges that this was her first "90-day custody review." (*See* Mot. 3). The ICE officer did not "tell [Petitioner] why [she is] still detained . . ., if or why [her] order of supervision was revoked, and what country ICE is trying to remove [her] to." (*Id.*).

Petitioner filed her Petition, alleging that: (1) ICE failed to comply with its procedural regulations; (2) Petitioner's detention violates 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) ICE cannot remove Petitioner to a third country without adequate notice and an opportunity to be heard. (Pet. 8–21). Petitioner seeks a temporary restraining order ("TRO") to (1) reinstate her supervised release; and (2) enjoin the Government from removing her to a third country without various procedures, including notice and an opportunity to be heard before an IJ. (Mot. 1, 4–5).

## II. LEGAL STANDARD

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1142 (S.D. Cal. 2021). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if she demonstrates (1) "that [s]he is likely to succeed on the merits," (2) "that [s]he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [her] favor," and (4) "that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party "must make a showing on *all four prongs* to obtain a preliminary injunction." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (emphasis in original) (citation modified).

Under the Ninth Circuit's "serious questions" test, "a 'sliding scale' variant of the *Winter* test," a party is "entitled to a preliminary injunction if [she] demonstrates (1) 'serious questions going to the merits,' (2) 'a likelihood of irreparable injury,' (3) 'a balance of hardships that tips sharply towards the [petitioner],' and (4) 'the injunction is in the public interest.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies*, 865 F.3d at 1217). "[I]f a [petitioner] can only show that there are 'serious questions going to the merits'—a lesser

showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the [petitioner's] favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). A petitioner need only demonstrate success as to at least one of her claims to receive an injunction. *See Ozkay v. Equity Wave Lending, Inc.*, No. 20-cv-08263-JST, 2020 WL 12764953, at *2 (N.D. Cal. Nov. 25, 2020).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the application." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (finding district court did not abuse its discretion in granting a preliminary injunction when it relied on hearsay evidence and "the many exhibits, affidavits, declarations and factual allegations which have been submitted . . . by all parties . . . throughout the course of this litigation"). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

Injunctive relief can be prohibitory or mandatory. "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (citation modified) (quoting *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988)). "A mandatory injunction orders a responsible party to take action[,] . . . goes well beyond simply maintaining the status quo pendente lite[,] and is particularly disfavored." *Id.* at 879 (citation modified). The "status quo" refers to the "last, uncontested status" between the parties before the controversy arose. *N.D. ex rel. Parents Acting as Guardians Ad Litem v. State of Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). Mandatory injunctions are subject to heightened scrutiny whereas prohibitory injunctions are evaluated under the traditional

*Winter* test. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879. "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (quoting *Clune v. Publishers' Ass'n of N.Y. City*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963)).

### III.  DISCUSSION

#### A. Injunctive Relief Sought

The Court first considers whether Petitioner seeks prohibitory or mandatory injunctive relief. Ordering Respondents to release Petitioner would be a prohibitory injunction, because Petitioner seeks to preserve the status quo preceding this litigation (being free from federal custody). However, enjoining the Government from removing Petitioner to a third country without court-imposed procedures (requiring notice, an opportunity to be heard, or an opportunity to file a motion to reopen with an IJ) may be mandatory. One may argue that such an order directs the Government to implement procedures it would "not otherwise have held" absent the Court's direction. *See Hernandez v. Sessions*, 872 F.3d 976, 998–99 (9th Cir 2017). On the other hand, the requested TRO may be understood as prohibiting the Government from unlawfully removing Petitioner to a third country. *See id.* at 999. "Because the nature of this provision is subject to greater dispute than the first, we assume without deciding that the [injunction] is mandatory." *Id.*

#### B. *Zadvydas* Claim

##### 1. Likelihood of Success / Serious Questions Going to the Merits

Petitioner carries the burden of demonstrating a likelihood of success (or alternatively, showing "serious questions going to the merits"). *See A Woman's Friend Pregnancy Res. Clinic*, 901 F.3d at 1167; *All. for the Wild Rockies*, 865 F.3d at 1135. However, Petitioner is not required to prove her case in full at this stage—only such portions that enable her to obtain the injunctive relief she seeks. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (referred to as the "removal period"). 28 U.S.C. § 1231(a)(1)(A). An alien must be detained during the 90-day removal period. *Id.* § 1231(a)(2). After the removal period, an alien not yet removed may continue to be detained or released under supervision; however, detention beyond the removal period is limited to what is reasonably necessary to bring about the alien's removal. *Id.* § 1231(a)(6); *Zadvydas*, 533 U.S. at 689. Section 1231 contains an implicit time limitation of six months, after which post-removal detention is no longer presumptively reasonable. *Zadvydas*, 533 U.S. at 690, 701. The petitioner has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which, the Government must respond with evidence sufficient to rebut this showing. *Id.* at 701. If removal is not reasonably foreseeable, the petitioner's detention is no longer authorized by statute. *Id.* at 699–700. "In that case, . . . the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700.

Petitioner argues that the removal period began at the issuance of her 2018 removal order. (*See* Mot. 1, 5); (Pet. 13). Petitioner also argues that even if the removal period began when she was re-detained on February 23, 2025, her eight months of re-detention exceeds the presumptively reasonable time limitation established in *Zadvydas*. (*See* Mot. 1, 5); (Pet. 13). Regardless of when the removal period started, Petitioner has been detained for more than six months, thus triggering the *Zadvydas* burden-shifting scheme. Petitioner has received minimal communications regarding her detention status. (Mot. 3). She has not been told which countries have been contacted for her potential removal, whether any country has agreed to accept her, or when a third country removal might occur. It appears, based on Petitioner's allegations, that the Government does not have any third country locations underway and does not have an answer as to when Petitioner will be removed. Accordingly, Petitioner has sufficiently raised a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

Respondents' efforts do not rebut Petitioner's showing. ERO submitted third country removal requests on three separate occasions, beginning on August 15, 2025—almost six months after re-detaining Petitioner. (Opp'n 5). Respondents admit that these requests remain "pending" and that no third country has accepted Petitioner. (*Id.*, Decl. of Daniel Negrin, ¶¶ 11–12). Respondents do not assert that removal will happen in the reasonably foreseeable future. On this record, Petitioner has demonstrated a likelihood of success on her *Zadvydas* claim, or at least showed serious questions going to the merits.[1]

### 2. Likelihood of Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioner is "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. "'Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty' that the Fifth Amendment Due Process Clause Protects." *Zadvydas*, 533 U.S. at 690. "The deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Therefore, the second *Winter* factor favors Petitioner.

### 3. Balance of Equities and Public Interest

When the Government is a party to a case, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). It would not be "'in the public's interest to allow the [Government] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Melendres*, 695 F.3d at 1002). "The public interest in enforcement of immigration laws, although significant, does

---

[1] In light of this determination, the Court declines to consider Petitioner's arguments that Respondents violated their procedural regulations.

not override the public interest in protecting the safeguards of the Constitution." *Domingo-Ros v. Archambeault*, No. 25-cv-1208, 2025 WL 1425558, at *5 (S.D. Cal. May 18, 2025). Accordingly, the third and fourth factors support injunctive relief. A TRO is warranted under the circumstances.

### C. Third Country Removal Claim

As shown above, Petitioner does not face an immediate threat of third country removal. Indeed, Petitioner argues that "[t]he [G]overnment has provided no evidence that it will succeed in removing [Petitioner] to a third country now." (Reply 10). Thus, based on the current record, the Court declines to impose any procedures required for Respondents to effectuate a third country removal. *Caribbean Marine Servs. Co. v Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (stating "a plaintiff must demonstrate *immediate* threated injury as a prerequisite to preliminary injunctive relief" (emphasis added) (citation modified)). Petitioner's request for such injunctive relief is **DENIED**.

## IV. CONCLUSION

Based on the foregoing, the Court: (1) **GRANTS** Petitioner's request to be released from custody; and (2) **DENIES** Petitioner's request to implement procedures before Respondents can effectuate a third country removal.

This Court hereby **ORDERS** Respondents to release Petitioner from custody within 48 hours of this Order's filing and restore her conditions of supervised release. The parties are **ORDERED** to file a Joint Status Report within 72 hours of this Order's filing, confirming that Petitioner has been released. Further, the Court **ORDERS** that Respondents are enjoined from re-detaining Petitioner during the pendency of her removal proceedings without prior leave of this Court. 28 U.S.C. § 1651. The TRO is in effect until the Petition is decided.

Respondents may submit an optional supplemental response to the Petition no later than **November 25, 2025**.[2] Petitioner may file an optional traverse no later than **December 9, 2025**.

**IT IS SO ORDERED.**

Dated: November 5, 2025

Hon. Dana M. Sabraw
United States District Judge

---

[2] Respondents responded to both the Petition and Motion in their Opposition. (Opp'n 1).