UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARINEH GHARAKHAN,<br><br>                          Petitioner,<br><br>  v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, Attorney General; TODD LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office, San Diego Field Office, CHRISTOPHER LAROSE, Warden, Otay Mesa Detention Center,<br><br>                        Respondents. | Case No.:  25-cv-02879-DMS-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

On October 24, 2025, Petitioner filed a petition for writ of habeas corpus ("Petition"), (Pet., ECF No. 1), and a motion for temporary restraining order, (ECF No. 2). On November 5, 2025, this Court issued an Order granting in part and denying in part Petitioner's motion for temporary restraining order ("TRO Order"). (TRO Order, ECF No. 11). Specifically, the Court granted Petitioner's request to be released from custody, but

1

25-cv-02879-DMS-AHG

denied Petitioner's request to implement procedures before Respondents can effectuate a third country removal. (*Id.* at 8). The Court now must rule on the Petition. Respondents filed a supplemental response to Petitioner's Petition, stating that "Respondents have no supplemental information at this time." (Suppl. Resp., ECF No. 13). Petitioner did not submit a supplemental reply. For the following reasons, the Petition is granted in part and denied in part.

## I. BACKGROUND

Petitioner and her family fled Iran when Petitioner was one year old. (Pet. 1). Her family came to the United States in the late-1980s, receiving permanent resident status as Armenian Christian refugees. (*Id.*); (Opp'n, ECF No. 9, at 1). In 2018, Petitioner was convicted of robbery and subsequently ordered removed to Iran. (Pet. 1). However, because of her status as an Armenian Christian and fear of persecution, Petitioner was granted withholding of removal to Iran. (*Id.*). On October 2, 2018, Petitioner was released from custody on an Order of Supervision. (Opp'n 1). If Petitioner committed any further crimes while on supervised release, she would be re-detained. (*Id.*). On or around February 21, 2025, Petitioner was arrested in Orange County for possession of a controlled substance. (Pet. 1); (Opp'n 1). She was released from county jail and taken directly into Immigration and Customs Enforcement ("ICE") custody on February 23, 2025. (Pet. 1); (Opp'n 1). She has since been in ICE custody. (Pet. 1).

Petitioner alleges that she has not been given a chance to contest her re-detention. (*Id.*). Respondents allege that ICE officers showed Petitioner a Form I-200, Warrant for Arrest of Alien, at the time of her re-detention, and a Notice of Custody Determination the next day. (Opp'n 1–2). Respondents allege that Petitioner had the opportunity to request that an immigration judge ("IJ") review her custody determination, but Petitioner affirmatively acknowledged receipt of the notification and declined review. (*Id.* at 2). Petitioner alleges that approximately six months into her re-detention, an officer told her that ICE was "trying to see what country they could send [her] to." (Pet. 4). On August 15, September 18, and October 8, 2025, ICE's Enforcement and Removal Operations

("ERO") sent requests to the Removal Management Division for third country removal. (Opp'n 5). On October 21, 2025, ICE provided Petitioner with notice that her custody status will be reviewed on or about October 31, 2025. (*Id.* at 2). Petitioner alleges that this was her first "90-day custody review." (*See* Pet. 4). The ICE officer did not "tell [Petitioner] why [she is] still detained . . ., if or why [her] order of supervision was revoked, and what country ICE is trying to remove [her] to." (*Id.*).

Petitioner filed her Petition, alleging that: (1) ICE failed to comply with its procedural regulations; (2) Petitioner's detention violates 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) ICE cannot remove Petitioner to a third country without adequate notice and an opportunity to be heard. (Pet. 8–21).

## II.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A petitioner prevails in his petition for writ of habeas corpus if he shows that his custody violates the Constitution or laws of the United States. *Id.* § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III.  DISCUSSION

### A. *Zadvydas* Claim

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (referred to as the "removal period"). 28 U.S.C. § 1231(a)(1)(A). An alien must be detained during the 90-day removal period. *Id.* § 1231(a)(2). After the removal period, an alien not yet removed may continue to be detained or released under supervision; however, detention beyond the removal period is limited to what is reasonably necessary to bring about the alien's removal. *Id.* § 1231(a)(6); *Zadvydas*, 533 U.S. at 689. Section 1231 contains an implicit time limitation of six months, after which post-removal detention is no longer presumptively reasonable. *Zadvydas*, 533 U.S. at 690, 701. The petitioner has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after

which, the Government must respond with evidence sufficient to rebut this showing. *Id.* at 701. If removal is not reasonably foreseeable, the petitioner's detention is no longer authorized by statute. *Id.* at 699–700. "In that case, . . . the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700.

In its TRO Order, the Court determined that Petitioner had been detained for more than six months, thus triggering the *Zadvydas* burden-shifting scheme. (TRO Order 6). The Court also found that Petitioner received minimal communications regarding her detention status: she was not told which countries have been contacted for her potential removal, whether any country had agreed to accept her, or when a third country removal might occur. (*Id.*). Thus, the Court found that based on Petitioner's allegations, that the Government did not have any third country locations underway and did not have an answer as to when Petitioner will be removed. (*Id.*). These facts remain true and no additional facts have been provided. Thus, the Court finds that Petitioner sufficiently raised a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

The Court also found in its TRO Order that Respondents' efforts did not rebut Petitioner's showing. (*Id.* at 7). To date, Respondents have "no supplemental information" regarding their efforts to effectuate Petitioner's removal. (*See* Suppl. Resp. 2). Thus, Respondents have not shown that Petitioner's removal is reasonably foreseeable. Petitioner's ongoing detention is therefore no longer authorized by statute. The Court **GRANTS** the Petition.[1]

---

[1] In light of this determination, the Court declines to consider Petitioner's arguments that Respondents violated their procedural regulations.

### B. Third Country Removal Claim

"A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of [Petitioner's] detention pending removal." *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025). "However, it is not the proper vehicle to bring claims that are . . . not ripe for review." *Id.* While Petitioner argues that the potential to be removed to a third country is unconstitutional, she also argues that "[t]he [G]overnment has provided no evidence that it will succeed in removing [Petitioner] to a third country now." (Reply, ECF No. 10, at 10). The Court recognizes Respondents' contention that "there is a likelihood of removal to a third country," (Opp'n 3), but there exists no evidence as to what countries are willing to accept Petitioner or when such a removal may occur. Thus, based on the record, the Court declines to address Petitioner's arguments regarding the constitutionality of her possible removal to a third country and declines to impose any procedures required for Respondents to effectuate a third country removal. *See, e.g.*, *Tran*, 2025 WL 3140462, at *4; *Do v. Scott*, No. C25-2187RSL, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025). A writ on this basis is **DENIED**.

### IV. CONCLUSION

Based on the foregoing, the Court **DECLARES** Petitioner's detention was unlawful and **GRANTS** the Petition on the *Zadvydas* claim. The Petition is **DENIED** as to the third country removal claim. The TRO issued on November 5, 2025 is **DISSOLVED**. The Court **ORDERS** that Petitioner **SHALL REMAIN** released from Respondents' custody under the same conditions of supervised release. The Court further **ORDERS** that Respondents are enjoined from re-detaining Petitioner during the pendency of her removal proceedings without prior leave of this Court. 28 U.S.C. § 1651.

**IT IS SO ORDERED.**

Dated: December 10, 2025

Hon. Dana M. Sabraw
United States District Judge